Feel free to begin whenever you're ready. I'm sorry, Your Honor. Just feel free to begin whenever you're ready. Okay, very good. Thank you. Good morning, Your Honors. May it please the Court? My name is Nancy Powell. I'm a solo practitioner representing the petitioner today. Thank you for this opportunity, and I would like to reserve some three minutes for rebuttal. This case involves seven issues that I've laid out in the opening brief. However, today, due to time constraints, I want to concentrate on the credibility finding and on the finding of no past persecution. This case is a Real ID Act case, and the finder of fact can base a negative credibility finding on a basis, whether it's material or immaterial, whether it goes to the heart of the claim or not. However, the credibility finding must be reasonable, and it must take into consideration the individual circumstances of the specific witness as laid out at page 16 of petitioner's opening brief. The Board, in its January 25th decision, initial first of two decisions, stated that the immigration judge's adverse credibility finding was not clearly erroneous. Was not clearly erroneous. Not clearly erroneous. They stated that the immigration judge properly relied on the first of two main issues, which was an alleged failure to disclose criminal records. The immigration judge, at least, also said that if that were the only thing, he wouldn't base his decision solely on that. For him, that's not enough. So if you're right on your second credibility point about what happened before the petitioner was born and his failure to recall it clearly, then the immigration judge, if the immigration judge would agree with you on that credibility thing, he wouldn't have ruled against the petitioner solely on the criminal record thing. Correct, Your Honor, yes. I'd like to focus you not on the third leg of the stool, which had to do with the reasons for his parents' release from the church. That was one of the grounds for the adverse credibility finding. And it seemed to me that the testimony was distinctly different from the declaration. In one case, there was active escape attempt described. In another, in the other, it was basically, well, eventually people went away and everybody left. So there were quite different descriptions of what happened. And under our standard of review, isn't that a permissible ground to find a discrepancy and therefore a lack of credibility? I would respectfully disagree, Your Honor. I think it's not a reasonable basis. What we're asking this now admittedly adult, but then infant respondent who learned of these events when he was a child of 10 years of age, to give a narration or a one single consistent account when he's heard of this chaotic, actually it was an incident that has been called a time of massacre, that many people, indigenous people, were killed in the area, to expect him to parse and use with nuance terms like escape, release, leave. All he knows really is that people were threatened with being burned alive, including his family members inside the church. Some known guerrillas, people who'd had the misfortune of being perhaps named on a list, or for whatever reason were known with some, believed to be known with some degree of certainty by the government soldiers to be, quote, guerrillas, were killed, did not survive that day. And others were not killed, and others managed to leave the church when the soldiers left. So what is an escape and what is being released? All of those, I think, it's just it is expecting too much, and it's not in keeping with this court's. But his descriptions were different, and whether he learned of it or not, I mean, if I've learned of something that happened to my parents, presumably I've learned whatever that story was, and if I tell it four different ways, somebody might not think that I'd really heard that story at all. And I guess what you've described is plausible, but the test for us is whether we're compelled by the record to agree with you that that is not a reasonable discrepancy to point to. I still, Your Honor, feel that, first of all, the declaration was written in circa 2005, read back to him only in Spanish, as shown at 630 of the record, page 630. That's because of the limited resources of the nonprofit that helped him when he was preparing his application and represented him at the asylum office. So sometime later, years later, when he's testifying in mom, in court, but with a mom interpreter from a different area, that these words of how they were released, escaped, I disagree. I don't think he told a different story at all. I think words of verbs of how they were let go, there's a tremendous amount of confusion about why people were able to leave the church. The fact is the soldiers were called away on a coup, but there's a lot of mythology among the storytellers and the people who survived about everything from it was a miracle to they don't know, just the doors were open in the morning. So whether it was a release, a leaving, an escape, I think the main point is he tells a consistent story of who in his family were lost that day, who were rounded up and put in the church, that he lost his brother and aunt. I mean, this is really. I have a theoretical question for you as well. The immigration judge, as Judge Friedman has pointed out, said, well, one of the grounds for my disbelief is that you failed to disclose your criminal record, your background, and that standing alone wouldn't probably make me disbelieve you, but it is one of the factors. So when it gets to the BIA and they find that the fact is not clearly erroneous, that is that he didn't disclose his criminal record, is the BIA bound to accept the IJ's statement that standing alone, that isn't enough, or could the BIA say factually that is not clearly erroneous, and we think it is enough? That's not what they said, but just out of curiosity, would they have been entitled to say that? I mean, Your Honor, I think traditionally the notion is the finder of fact at the first level, at the court hearing in this case, is the best arbiter of credibility. Here there's very few findings on demeanor, and the BIA went and I think mischaracterized the immigration judge's assessment by saying she relied on it to find negative credibility, whereas her own words are she was troubled by it and it would be reluctant to find negative credibility based on that alone, and then proceeded to. Which is a way of saying it's one of the factors, but if it were the only one, maybe I wouldn't have reached the same. She wouldn't have found. Maybe I wouldn't have reached the same. Right. Be reluctant. It doesn't say I wouldn't do it. Right. And so I think that these issues require remand to see and to flesh out exactly just exactly these issues. And, Your Honor, on the issue of failure to disclose, I would note that the several criminal matters, these driving infractions and alcohol-related DUI-type arrests all happened after the application was initially filled out and submitted. They happened in 2006 and onward. And really what we have to remember is that there's a very unsophisticated, uneducated, indigenous respondent here who really when he's asked, you know, if his application is true and correct, he is relying on counsel to have reminded him of these issues. He doesn't read English and he really it's a very regrettable omission that resulted in the lack of If we were to remand, what do we say? What's supposed to happen on remand? On remand, I think we need to really look at the standard that a then-child petitioner the standard for credibility that's applied Can we tell the I.J. that he can't rely on this theory of shifting stories about events that took place before the petitioner was born? He's got to just put all that aside and then reevaluate it? Or what exactly are the instructions to the I.J.? When you have a respondent who was a child who was expected to narrate events that happened either before he was born or when he was an infant, who learns of them as a child, I think the court is called upon to address and to instruct the lower court, the immigration judge, to look at what are the factors that pertain to a child who came out of an environment of trauma, of deprivation, uneducated. None of those factors seem to have been applied in evaluating the credibility of this respondent who's trying to tell what happened when he was a child. I thought you were asking us to remand with instructions to deem your client credible because isn't the rule ordinarily that if we are presented with an adverse credibility determination and we conclude that it's not supported by valid reasons, that the typical remedy, I thought, was that we would send it back and say, no, you're going to deem this petitioner's testimony credible, now evaluate the case in light of that. And I would say here, if you deemed his testimony credible, he would have established past persecution. And the question would be whether the government then, I think, would need an opportunity to see if it could rebut the presumption. Exactly, Your Honor. And I haven't even gotten into the failure of analysis with regard to the past persecution issue, which just very briefly, as stated in the brief, the judge refused to look at or did not acknowledge at a minimum the fact that the family, when they returned, when Petitioner's mother was pregnant with him, that they were returning gorillas, all of that was given extremely, like, no, the judge just did not bring that into her analysis. And, in fact, she said that Petitioner's brother-in-law was killed because he was seeking to return his land, to get the family land back. All of those issues of would he be associated with the same family because their names were different, all of that was, in my view, incorrect analysis. And, furthermore, members of the family who are landowners seeking to get their land, this Court has found that those can be landowners, can under certain circumstances be a particular social group in and of itself. And I believe the case that is most apposite in that is, I think it's Henrietta Rivas. But to answer your question, Judge, of course, we're asking for this Court to review whether there was a reasonable basis for the judge's credibility determination in light of all these factors that we've discussed. In that case, Enriquez Rivas, beholder. So even if the brother and the family did go back to get their land, the judge gave that no, seemed to find that that was not a basis for this Petitioner being a member of a particular social group. And I see my time is up. You have about a minute and a half for rebuttal, if you'd like to save it. I'd like to save that for rebuttal. Thank you, Your Honor. I'm going to hear from the government. Good morning, Your Honors. May it please the Court, Alexander Lutz, on behalf of the Attorney General. Could you speak up and maybe raise the microphone? I'm sorry. Of course, Your Honor. Good morning, and may it please the Court. Alexander Lutz on behalf of the Attorney General of the United States. Your Honors, in her time before the Court, counsel for Petitioner referred to this as a seven-issue case, but really all those issues collapsed down to one single issue, which is the issue the panel focused on, the adverse credibility determination. Before you launch into the merits of that, let me just see if I got the playing pieces on the board straight. Sure. If we were to disagree with the I.J.'s rationale, put aside the criminal history, the driving, drunk driving, whatever, because I don't think that's an independent basis, but if we were to disagree with the reasons given by the I.J. with respect to, I guess, inconsistencies, supposed inconsistencies in his story about what happened to his parents, what would happen then? Because as I laid out to counsel, I have an idea of what I think would happen, but I want to just get straight from the start if you think I'm wrong in that. No, your idea was correct, Your Honor, and so was the point Judge Friedman raised about what would happen on remand. Where an adverse credibility determination is before the Court under the substantial evidence standard and under the Real ID Act, which does apply here, this panel would have to find that any reasonable fact finder would be compelled on the basis of this record to conclude that Mr. Mendoza provided credible testimony. So if the Court were to reach that conclusion, what would happen is we would essentially say this adverse credibility determination is unsupportable on the facts of his record. Excuse me. Wait. That's what I want to make sure I'm straight on. Right. I didn't think our review went quite that far. I thought what our job was to do was to look at the reasons given by the IJ, right, and if we disagree with those reasons, we don't then say, okay, well, man, there might have been 50 other reasons, so let's try to figure that out ourselves, or even that, well, let's send it back to the IJ to give him or her another chance. Don't we just review the adequacy of the reasons stated, and if we find them inadequate and not adequate, we send it back and say, typically, now deem the Petitioner's testimony credible, no? I think that's correct, Your Honor, yes, and if I indicated to the contrary, I may have misheard or misremembered your question from earlier in the morning. The Court does review the bases that the immigration judge reached and that the Board upheld on which this adverse credibility determination was based, and the panel would have to conclude that any reasonable fact finder would be compelled to find to the contrary. On remand, if those reasons for the adverse credibility determination were set aside, the Board would then presumably proceed to consider the facts about which the Petitioner did provide credible testimony in this hypothetical scenario to conclude.  Well, but, okay, and in this case, the Board did that, but then you, not you personally, but the government, the Attorney General, did not choose to defend the Board's alternative holding, if I'm remembering this case right. Sometimes the facts bleed together, but if I remember, the BIA here kind of unusually did go on to say, well, even if this person could be deemed credible, here's why this person would lose. And there was a legal principle that BIA stated that I think is now inconsistent with our case law, and I thought that was the reason why your client didn't decide to defend the BIA's ruling on that ground. Okay. I think I understand Your Honor's question. You're referring to the last footnote in the brief for the Respondent, correct, in which we suggested that in the alternative instance that the Court were to conclude that any reasonable fact finder would be compelled to find Mr. Mendoza testified credibly, that the case should be remanded for reconsideration in light of the decision in Mendoza-Pablo. Right. Okay. Well, Your Honor. But that has to do, I think, with the motion to reopen and this, because the BIA issued another decision that basically said they weren't going to consider that, right? Your Honor, that's the decision that's on Petition for Review in case number 72544. You're right. The rejection or the denial, rather, by the Board of the motion to reopen. And what the Board was effectively saying there is that because Mr. Mendoza didn't provide credible testimony, the version of events that he sets forth in his testimony is effectively off the table. And that does a lot to Mr. Mendoza's case, because what we have here, the only evidence that he submitted other than background country conditions evidence, the only evidence about what happened personally to him that he submitted other than his own testimony was, I believe, a birth certificate. So his testimony is the only thing in the record that sets forth this version of events where his parents were involved with guerrillas or were suspected of being involved with guerrillas, were present at that church incident in 1982, and Todos Santos returned after having fled to Mexico in 1986 to attempt to reclaim their property and were unsuccessful. That all rests on Mr. Mendoza's testimony. So in rejecting the motion to reopen, what the Board was saying is we can't determine whether Mendoza-Pablo is applicable here. It's not applicable here because there are no facts that could even give us a prima facie indication that this Petitioner is similarly situated to the Petitioner in Mendoza-Pablo. So tell me this, then. Sure. You have enough time, luckily, to get to the merits. So if we were to disagree with you on the adverse credibility determination, and I'll tell you that's where I'm inclined to go now, subject to hearing what you have to say, tell me then what the remand would look like in your view. Well, on remand, the Board would consider the facts about which they determined Mr. Mendoza may have testified credibly in this hypothetical situation, and they would consider how those facts apply to Mr. Mendoza's verdict. Wouldn't they have to accept everything he said? Well, Your Honor — If they had a chance to explain why they didn't think he was credible, excuse me, and their reasons don't stand up, don't they have to accept it on round two? Again, hypothetically, I know you don't agree that we should do in the credibility finding, but — Well, I'm not sure how to quite answer that question, Your Honor. The Board would have to take another look at the record, and they'd have to determine, taking off the table the grounds that the adverse credibility determination on review today was based on, whether Mr. Mendoza testified credibly. What case allows them to do that, Ninth Circuit case? I'm sorry, Your Honor. I can't cite you a case for that proposition. We are speaking hypothetically here. I believe they would have to — We're speaking about what is the right remedy if you're — if opposing counsel's argument were accepted. So it's not hypothetical in that sense. It's — we have to decide if we were to agree with that argument, what is the result under our precedent? Your Honor, I believe that you're correct that the Board would have to — would have to deem Mr. Mendoza to be — to have testified credibly if the court concludes that Mr. Mendoza testified credibly. And they would have to look at all that, and they would apply whatever and figure out if they would take the next steps. Excuse me, Your Honor. I didn't mean to interrupt. But I believe, yes, you're correct. And they would determine whether he had met his burden to establish his eligibility for asylum, withholding of removal, and protection under the Convention Against Torture. And they would do that in light of the court's precedent in Mendoza-Pablo and otherwise. But, of course, that's the Board's decision. And in this hypothetical situation, it's — we can't predict how the Board would determine that. It's just their — under the ordinary remand rule, their prerogative to determine it in the first instance. But that doesn't change the fact that they correctly decided on this motion to reopen that there were no facts in light of this adverse credibility determination that could give rise to any applicability of Mendoza-Pablo. There is nothing in the record in the absence of Mr. Mendoza's testimony to indicate that he's at all similarly frustrated. Well, it's premature for us to talk about Mendoza-Pablo because the BIA hasn't done it yet. They haven't applied it to this case. So we can't. I mean — That's absolutely correct, Your Honor. But — and so it appears to be distinguishable in some respects. But that's irrelevant at this stage. I would appreciate your talking about the adverse credibility finding. And I did not find one of the reasons to be persuasive, but I would like you to talk about what your view is of the record and of that finding. With pleasure, Your Honor. The adverse credibility finding in this case is well supported by the record in all respects, especially under the REAL ID Act, which applies in this case. The court in Shrestha discussed the REAL ID Act and determined that it was a welcome corrective. It removes the heart of the claim rule, and it allows an immigration judge to base an adverse credibility determination on any inconsistency, provided that it's not a merely trivial inconsistency, and provided that the immigration judge makes that determination in light of the totality of the circumstances, which includes any — We're really familiar with that act, Counsel. Of course. Forgive me, Your Honor. But I guess my problem with I.J.'s stated basis is that this isn't a situation where the petitioner can't keep his story straight about things that happened to him, at least not when he was, you know, someone who could actually process the events and remember them. He's just relying on accounts that, as I understand it, he probably received from several different family members. So it seems — I don't know. It just seems unrealistic to say, well — or it is not unrealistic. It just seems improper to say, because you have these various strands of memories that are partially based on what you learned when you were 10 years old, partially probably what you've been told after that, if there are divergences in those accounts, that somehow you're lying about having ever heard any of this stuff. That just strikes me as not at all how human beings work. So I'd love to hear what you have to say in response to that. Sure, Your Honor. Well, I suppose I'd make a couple of points in response to that. First of all, the immigration judge did consider the explanation that Mr. Mendoza would have difficulty remembering these events since they occurred before he was born and reached the average credibility determination nonetheless. And I'm citing here to page 89 of the record, specifically the record in case number 70550. The immigration judge said, while the court understands that Respondent was not yet born when these events occurred, his shifting story undermines his claim and his credibility. Under the Real ID Act, as long as the immigration judge considers that explanation, he's satisfied those requirements and the court would have to determine any reasonable fact finder would be compelled to conclude the testimony was credible. Well, what's reasonable about that rationale? I guess that's where I'm stuck. That doesn't strike me as a reasonable rationale for concluding that somebody's lying. It's reasonable for two reasons, Your Honor. First of all, the Petitioner's burden is to demonstrate his prima facie eligibility for relief and protection for removal, and he was unable to do that on the basis of his testimony. There's no reason he had to try to do it on the basis of his testimony alone, but that's what Mr. Mendoza chose to do. Only his testimony sets forth these facts, and his testimony was inconsistent and, therefore, as a matter of law, he's not — he hasn't — Well, what — maybe pinpoint the inconsistencies that you think are most glaring. Well, Your Honor, the immigration judge sort of set up two categories of inconsistencies. I'll deal with the first one first, which is the inconsistencies regarding his parents' guerrilla involvement in their release from the church. In his testimony, Mr. Mendoza said at page 161 of the record in case 70550 that the guerrillas told Mr. Mendoza's father they would kill him if he didn't join, and so he joined the guerrillas. And then he said the soldiers took people to the church, and I'm quoting Mr. Mendoza now, and they released them after some time, and the ones that had joined the guerrillas were killed. This is at page 166. So then when asked, well, if the ones who hadn't joined the guerrillas were released and your parents had joined the guerrillas, why weren't they killed? And at that point, he says, oh, well, they did help them, but they didn't exactly join them. That was probably the reason that they weren't killed. And then just a couple pages later in the record, he changes his story again and says, when directly asked, did your father join the guerrillas, Mr. Mendoza said, yes, he did. He said he did because they told him if he would join them, they would help him. His story changed in response to his question, and on the basis of that record, it can't be held that any reasonable fact finder would be compelled to conclude he provided consistent and credible testimony. Give me the pages again you were reading from because I can't find them. Sure, Your Honor. This is in the record in case number 70550. I'm looking at pages 161 and 166. I'm sorry. Continue your answer. Thank you, Your Honor. I was going to turn actually to the inconsistencies regarding why his parents were released from the church, but if your question goes in a different direction. No, please. Go ahead. What's the date of the transcript you're talking about on page 166? Is it May 11, 2010? Am I looking at the right thing? I'm sorry, Your Honor. I don't have that date in front of me right now. It would be the certified administrative record filed in that proceeding. But with respect to why his parents weren't released from the church, his written declaration, which he signed on August 17, 2009, this is at page 450 of the record, says, I think it was a miracle that the soldiers were called away and my parents survived. And even if we take his declaration off the table and look only at his testimony, he reiterated that at pages 168 to 169. He said the soldiers were called away and that's why my parents were released. But then at pages 165 to 166, he said the soldiers probably didn't know that my parents had helped the guerrillas and that's why they were released. So, again, his story changed in response to the questions that he was asked. And this Court would have to hold that any reasonable fact finder would be compelled to conclude that he provided consistent credible testimony in order to overturn this adverse credibility determination. What is the government's position about the failure to disclose criminal history? The IJ said, you know, you swore in 2009 that you'd never had any criminal history, but yet starting three years before that, you had a fairly extensive history. And the IJ said, I would be reluctant to rely on that alone, but didn't flat out say I wouldn't rely on that alone. So what is the posture of that reluctance at the BIA level? It's kind of a version of the question I asked opposing counsel. Could the BIA or would we have to, if we found the other reasons not supported, have to defer to that one reason? I'm not asking the question very clearly, but. Well, first, Your Honor, I see I'm out of time. Please answer the question. I'm happy to. And I want to try and clarify the question first to make sure I understand it right. I'm not surprised you didn't understand it very well. Is Your Honor trying to, is Your Honor asking whether the single, whether the finding that Mr. Mendoza had failed to testify credibly and consistently about his criminal record would alone support the adverse credibility determination? That's actually my question because our case law does say under the Real ID Act that any one supportable reason that is sufficient and non-trivial can support the ultimate finding, even if not every other reason given is supportable.  Would that be a permissible basis, standing alone, to uphold the adverse credibility finding? It would, Your Honor. Although it wasn't in this case the only basis, it would be. The Real ID Act allows any inconsistency to support an adverse credibility determination, regardless of whether or not it goes to the heart of the petitioner's claim. And did the IJ's reluctance to rely on that alone, does that affect our analysis when the BIA relies on it without expressing the same reluctance? Where do we stand on reluctance? Your Honor, I'm not exactly sure how to answer that question either, I'm afraid. I'm not sure that the immigration judge's reluctance to base an adverse credibility determination solely on these particular inconsistencies and this particular failure of candor affects this panel's analysis of the adverse credibility determination that the immigration judge ultimately did in fact make. Okay, but I think the question is this. If, hypothetically, I won't say I think your question is this, a related question is if we disagree with you in that and we say we're not, we don't think they should have paid any attention to the discrepancies of what happened when he was an infant. And so the only thing left on credibility is the DUIs and the criminal record and the statement from the IJ about her reluctance. Can we, as a court of appeals, say we have no such reluctance and we think that's enough? Or do we have to remand to see whether the BIA says we have no such reluctance and therefore we conclude, or does it have to go all the way back to the IJ who then says, now that we've set aside what happened when he was an infant, how strong is my reluctance? Which tribunal addresses that if we disagree with you and agree with your opponent on the credibility about the joining the guerrillas issue? Your Honor, if the Court finds that any reasonable fact finder would be compelled to conclude that Mr. Mendoza testified credibly regarding the incidents that he alleges in 1986 and in 1982, the Court would still have to find that the remainder of the adverse credibility determination is not supported by substantial evidence in the record. In other words, I believe the panel has to consider the adverse credibility determination as it was given and the reasons that were given in support of it. And the fact that the immigration judge was reluctant to base a decision, commented that she was reluctant to base the decision solely on one ground, doesn't really affect that analysis when the adverse credibility determination was not ultimately based on that one ground. The adverse credibility determination in this case rested on multiple grounds that are all before the Court. And under the Real ID Act and this Court's precedent in Shrestha, the panel reviews the entire determination for substantial evidence. Thank you, counsel. Thank you, Your Honors. We respectfully request that the Court deny both petitions for review. Thank you. Your Honors, this case really does show how little it takes to arrive at a negative credibility finding. The amount of preparation, the language issues, the psychological issues on the part of the Petitioner, all of these things combined in a sort of perfect storm in this case to cause the immigration judge to find adverse credibility. She would not, from what she said in the record, she had a problem with the criminal issue, quote, unquote. She was reluctant. She would not have based her adverse findings solely on that. She didn't say that. She said she might be reluctant to do it. She didn't say she wouldn't do it. Correct. But I'm looking at the hints, the language that we do have. That other language was, I have a problem with it. I mean, that doesn't seem to me. Which way does that mean, though? I have a problem with his lies about his criminal history or I have a problem with relying only on this? To me, it sounds like it's not enough in and of itself to have caused her to find against the Petitioner on credibility. There is independent. I have to assert again that the language that was used, for example, in how the family members who were locked in the church got out of that situation, whether they escaped the situation, escaped the building, they got away, they were released, it all points to the same story. There's no lack of credibility there. There's a consistent narration, this is what happened to my family members. This is what I was told happened years later. I want to pursue the this is what I was told piece of it because you've relied heavily on the idea that this is something that he didn't personally experience and that's true. But let's suppose that I testify that I learned from my mother that she taught English as a second language and then I later said, no, no, actually she taught French. And then in answer to some other questions, wait a minute, I thought she didn't speak French and then I'd say, oh, yeah, well, she taught German. I mean, can't you doubt that you as a fact finder, even though I wasn't alive then, that maybe I never heard about it at all or maybe I'm making up this whole thing. Isn't that a permissible inference, even though I wasn't present in the world at the time my mother taught English as a second language? I respectfully disagree, Your Honor. If the petitioner had said my family was locked in a... Wouldn't you be able to doubt the veracity of my initial account or my preferred account as to what it was my mother taught? In this case, if he had said they were locked in the church, no, they weren't. Please answer my question. You don't have to answer my question, but it's not helpful to me if you don't. I'm sorry, I think I'm so focused on... I'm focusing on the possibility that even when you're recounting something that was told to you by someone else, if you change your story, can't you be considered not credible about what you are imparting? In other words, that you made up the hearsay. Yes, Your Honor, but that's not what we have here. Okay. We have different verbs being translated, escape, release, got away. We have parsing of, like, what was translated as join. Was it enough to, quote-unquote, join the guerrillas if you gave them food? I don't think so. I think likely that level of forced assistance would not have come to the attention of the soldier such that that family member would be known to have, quote-unquote, joined the guerrillas. I mean, not to be facetious, but they weren't issuing membership cards. You know, it requires really... No, but you're speculating about how to fit all this together, and it's plausible, but the question for us is whether yours is the only plausible way to understand this testimony under our standard of review. I would note, Your Honor, that there is independent corroborating evidence of the story and the fact that the person, the nephew, the Petitioner's nephew who he traveled with to the United States, the son of the deceased Margarito, was granted asylum and his approval is at 570 in the record. So there's independent corroborating evidence in this record. That is the record of that. The record of that is not in this record. We don't know what all the factors were in that instance. No, he was unavailable as a witness. Thank you, Counsel. The case just argued is submitted, and we very much appreciate the arguments of both counsel. Thank you, Your Honors.
judges: Friedman, Graber, Watford